BOBBY PORTER,

        *Petitioner*,

v.

UNITED STATES OF AMERICA,

        *Respondent*.

)
)
)
)
)
)
)
)
)
)

Nos. 2:09-cr-31; 2:11-cv-311-RLJ-DHI

## MEMORANDUM OPINION

Federal inmate Bobby Porter brings this *pro se* motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 (Doc. 1017).[1] Porter was convicted, pursuant to his guilty plea, of conspiring to distribute and possess with the intent to distribute fifty (50) grams or more of cocaine base ("crack"), in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A), receiving, for this offense, a Guidelines sentence of 230 months (Doc. 734).

### I.  Procedural Background

Porter filed an appeal, which was dismissed upon the Sixth's Circuit's finding that he has waived his right to pursue a direct appeal, via a valid appellate-waiver provision in his plea agreement (Doc. 886, *United States v. Porter*, No. 10-6137, slip op. (6th Cir. Feb. 28, 2011)). Porter did not seek further review in the Supreme Court but, instead,

---

[1] Docket number citations in this opinion refer to petitioner's criminal case (No. 2:09-cr-31).

returned to this Court with this timely § 2255 motion, raising claims involving his guilty plea, sentencing, and counsel's purported ineffective assistance.

The United States has filed a response in opposition to the motion, arguing that, in his plea agreement, Porter also waived his right to file this § 2255 motion, that his claims are unreviewable due his procedural default, and that, in any event, the claims lack merit (Doc. 1105). Porter has submitted a reply to that response, disagreeing completely with the government's position (Doc. 1128). For the reasons which follow, Porter's § 2255 motions will be **DENIED**.

## II.    Standard of Review

The motion will be reviewed under 28 U.S.C. § 2255(a), which permits a federal prisoner to make a motion to vacate, set aside, or correct a judgment of conviction and sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional

magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate and the other documents show conclusively that the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** that an evidentiary hearing is unnecessary in the instant case.

### III.  Factual Background

The plea agreement contained a factual basis to support Porter's guilty plea (Doc. 223). According to that document, on March 9, 2009, a confidential informant met with Glenda Gilliam, one of Porter's co-defendants, to make a pre-arranged purchase of one ounce of crack cocaine. Shortly thereafter, Porter arrived with Anthony Bryan, another co-defendant, and Gillian climbed into Porter's vehicle. Porter and Bryan delivered to her one ounce crack cocaine, two-two grams of which she then sold to the CI.

On March 27, 2009, the CI made a telephone call which was recorded, arranging for another crack cocaine purchase of three ounces. Once again, both Porter and Bryan arrived at the designated meeting place, where they distributed approximately 79.3 grams of crack cocaine to the CI.

3

On that same day, agents obtained a warrant to search the residence in Whitesburg, Tennessee, which Porter and Bryan shared. During the execution of the search warrant, agents discovered a loaded .45 caliber handgun, supplies for packaging cocaine and other drug paraphernalia, $30,810 in cash, and 867.2 grams of crack cocaine. Most of cash and most of the crack cocaine were near each other and inside Porter's padlocked bedroom. The crack cocaine was already packaged for resale. The firearm and the other items associated with drug dealing were found in the kitchen and the key to the padlock on Porter's door was on his key ring.

Porter acknowledged that he had brought the drugs from Atlanta, Georgia, to his Whitesburg home, that he could produce three ounces of crack cocaine from cooking one ounce of powder cocaine, and that he had assisted Bryan on multiple occasions in delivering crack cocaine.

From February of 2006 to April 14, 2009—the period of the conspiracy, Porter and Bryan stored approximately 25 ounces of crack cocaine at their residence. They also stored crack cocaine at a co-defendant's residence, until it could be sold to buyers in the Eastern District of Tennessee.

## IV.   Discussion

In his motion to vacate, Porter asserts that, for several reasons, his guilty plea is invalid; that, for two reasons, his sentence is illegal; and that, in multiple instances, he received ineffective assistance of counsel.

**A.      Waiver Issue.**

At the outset, the Court must resolve whether it can even entertain this motion, since a provision in Porter's plea agreement waived his right to file a § 2255 motion, except for claims of ineffective assistance of counsel or prosecutorial misconduct unknown to him by the time of entry of judgment (Doc. 223, Plea Agreement ¶ 14(b)).

As long as Porter understood the terms of the plea agreement and as long as the waiver was made voluntarily and knowingly, the waiver is valid and enforceable. A review of the transcript of the plea proceedings indicates that Porter understood the § 2255 waiver provision and that his waiver was made voluntarily and intelligently.

During those proceedings, the Court first questioned Porter as to whether his attorney had explained the terms of the plea agreement and whether he was satisfied with counsel's advice (Doc. 821, Chg. of Plea Hr'g Tr. 6). Porter gave positive answers to those questions (*Id*.). After the § 2255 waiver provision was summarized, the Court asked Porter whether he understood that provision and whether counsel explained to him that he was giving up those rights (*Id*.) Again, Porter's answer to these questions was positive.

The Court then found that, based on its observations of Porter's appearance and responsiveness to the inquiries, he was in full possession of his facilities, was not under the influence of any narcotics, drugs, or alcohol, was knowingly waiving his constitutional rights, and was pleading guilty knowingly and voluntarily, with the understanding of the nature and the consequences of his plea (*Id*. at 16-17). Porter did not then and does not now challenge most of those findings. The Court also specifically determined that Porter understood the plea agreement made on his behalf (*Id*. at 17).

"Where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to the court's inquiry." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir.1993), *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). This Court scrupulously followed the Rule 11 procedure and Porter is bound by his sworn statements he made in response to the Court's inquiry under Rule 11.

To comport with the Constitution, a guilty plea must be voluntarily, intelligently, and knowingly entered, as explained in *Boykin v. Alabama*, 395 U.S. 238 (1969). While the *Boykin* rule does not dictate a specific judicial colloquy, *Scranton v. Whealon*, 514 F.2d 99, 101 (6th Cir. 1975), Rule 11(c) of the Federal Rules of Criminal Procedure, which guided the plea colloquy, "codifies . . . the requirements of *Boykin v. Alabama*" by detailing "the information a district court must communicate to a defendant in order to ensure that a guilty plea is valid." *Libretti v. United States*, 516 U.S. 29, 49-50 (1995) (citations omitted). "Once the district court conducts the required colloquy under Federal Rule of Criminal Procedure 11, and finds the plea knowingly and voluntary entered, absent compelling reasons to the contrary, the validity of the plea and the defendant's corresponding guilt are deemed to be conclusively established." *United States v. Sprague*, Nos. 2:06-cr-19, 2:11-cv-299, 2015 WL 630382, *at 8 (E.D.Tenn. Feb. 12, 2015) (citing *Gray v. Commissioner*, 708 F.2d 243, 246 (6th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984)).

Based on the foregoing law and analysis, this Court finds that Porter's waiver of his right to file this § 2255 motion was made knowingly and voluntarily and, likewise, is enforceable (Doc. 821, Chg. of Plea H'rg Tr. 6, 14).

Accordingly, since the § 2255 motion does not raise any claims which were excluded from the waiver, Porter's waiver of his right to file this § 2255 motion bars review of the claims raised therein.

However, even without the waiver provision in the plea agreement, as the United States points out in its response, the claims offered in the § 2255 motion warrant no relief because they are not cognizable, were procedurally defaulted, or lack merit. The Court now turns to those claims.

## B. Guilty Plea Claims

Porter maintains that his guilty plea is constitutionally invalid for several reasons, the first of which is that the Court failed to comply with the plea taking procedures involving waivers, as required by Rule 11. *See* Fed. R.Crim. P.11(b)(1)(N) (requiring a plea-taking court to inform a defendant of "the terms of any plea-agreement provision waiving the right . . . to collaterally attack the sentence" and to determine that he understands).

The section of the plea agreement containing the waiver states, in relevant part:

> In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of

7

counsel or prosecutorial misconduct not known to the
defendant by the time of the entry of judgment (Doc. 223,
Plea Agreement 10).

The Court has determined that the plea colloquy was conducted in accordance with

Rule 11's requirements and now finds that the plea hearing transcript reflects quite

clearly that Porter understood the provision in the plea agreement waiving his statutory

right to file a § 2255 motion. Furthermore, Rule 11"does not require a district court

specifically to ask a defendant whether he understands the terms of a waiver provision;

rather, it only requires a court to 'determine' that the defendant understands the terms of

such provision." *United States v. Zumot*, 337 F.App'x 520, 523 (6th Cir. July 21, 2009)

(citations omitted). This argument has no merit, as it is refuted by the record.

Porter next argues that counsel's failure to advise him of the nature and

consequences of his guilty plea renders the plea invalid.

During the plea-taking proceedings, Porter acknowledged, under oath, that counsel

had given him the advice which Porter now asserts that he did not give (Doc. 821, Chg.

of Plea Chg. Tr. 4-6). But even absent this acknowledgment, this Court informed him of

the nature and consequences of his guilty plea (*Id.* at 6-6). Furthermore, after receiving

this information from the Court, Porter persisted in pleading guilty and did not move to

withdraw his guilty plea (*Id.* at 12-16). *See Baker v. United States*, 781 F.3d 85, 92 (6th

Cir. 1986) (finding a plea valid where a petitioner "consented in open court to the terms

of the plea agreement,[] understood the consequences of his guilty plea, and [] 

consciously chose to plead rather than to go to trial").

The Court complied with Rule 11 requirements that a defendant be informed of "the terms of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence" and that it determine whether a defendant understands those terms. Fed. R. Crim. P. 11(b)(1)(N). Porter's conclusory and factually undeveloped allegation that his plea is invalid because counsel did not adequately advise him of the nature and consequences of his guilty plea (Doc. 1017, § 2255 motion ¶ 12(A)), is rejected based on the plea colloquy transcript.

Porter's final argument in this set of claims rests on his reliance on *United States v. DePierre*, 131 S.Ct. 2225 (2011), which he describes a recent retroactive Supreme Court decision that renders his plea invalid (Doc. 1017, § 2255 motion 4; Doc. 1017-1, Petr.'s Br. 8-9, Doc. 1128, Petr.'s Reply 4-5). *DePierre* held that the term "cocaine base" contained in 18 U.S.C. § 841(b)(1) means all cocaine in its chemically basic form and not just "crack cocaine. *Id.* at 2237. Thus, "the statute reaches more broadly than just crack cocaine." *Id.* at 2231.

Contrary to Porter's assertion, *DePierre* has not been held to apply retroactively to cases on collateral review, such as the instant § 2255 motion. *Dyer v. United States*, No. 1:12-cv-613, 2013 WL 3216180, at *2 (W.D.Mich. June 25, 2013) (listing cases). Furthermore, Porter has not explained how the *DePierre* decision affects the validity of his plea. Indeed, the Court finds that it does not because Porter stipulated that the substance which he conspired to distribute and possess with the intent to distribute was cocaine base (crack cocaine) (Doc. 223, Plea Agreement 3-5). And, he admitted, under oath, that the offense to which he was pleading guilty involved crack cocaine (Doc. 821,

Chg. of Plea Hr'g Tr. 8-12). Thus, if Porter is contending that his conviction is based on a substance that was not proven to be crack cocaine, so that he does not qualify for the harsher penalties imposed for an offense involving crack cocaine, as opposed to powder cocaine, his admissions that the conspiracy involved crack cocaine remove any question regarding the specific type of cocaine underlying his conviction and relieve the government from its duty to prove a fact which has been conceded.

## C.    Sentencing Claims

As the first sub-claim in this category of claims, Porter maintains that the prosecution failed to carry its burden of proof to show that the guns discovered during the search of his residence were connected to the cocaine conspiracy, so as to justify a firearms-enhanced sentence. In the second sub-claim, Porter argues that an unwarranted disparity exists between the sentence he was issued and the sentences handed down to similarly-situated persons.

As the United States correctly points out, claims involving errors in the application of the Sentencing Guidelines, which are non-constitutional errors, generally are not cognizable in a § 2255 motion. *United States v. Addonizio*, 442 U.S. 178 (1979) (explaining that a district court's subjective intent in sentencing is not a subject cognizable on § 2255 review); *Hill v. United States*, 368 U.S. 424, 428 (1962) (failure to offer a defendant an opportunity to allocate at sentencing not an error that could be raised in a § 2255 motion); *Hawkins v. United States*,706 F 3d 820,824 (7th Cir. 2013) ("An erroneous computation of an advisory Guidelines sentence is reversible (unless harmless) on direct appeal; it doesn't follow that it's reversible years later in a postconviction

proceeding."); *Ignatow v. United States*, No. 94-5588, 1994 WL 696217, at * 1 (6th Cir. Dec. 12, 1994) ("[Petitioner's]first claim challenging the calculation of his sentence is not even subject to review under § 2255.").

On collateral review, as stated earlier in this opinion, unless the record reflects a fundamental defect in the proceedings which necessarily resulted in a complete miscarriage of justice, a sentencing error, to wit a non-constitutional error, cannot be raised in a § 2255 motion. *Reed*, 512 U.S. at 353. The errors asserted here are not members of the "small" class of errors which would call for § 2255 review, but are mere "garden-variety issues of . . . guideline calculations." *Id*. at 357 (Scalia, J. concurring in part and concurring in the judgment); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Therefore, the errors here asserted cannot be offered under § 2255.

The United States also asserts that since sentencing claims are properly raised only on direct appeal, that Porter's claims have been procedurally defaulted. Claims which could have been raised at trial or on direct appeal when they could have been presented may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse a failure to raise the claim previously. *See Bousley v. United States*, 523 U.S. 614, 619 (1998); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Presumably, to show cause, Porter maintains that he did not receive review of the reasonableness of his sentence when he raised that claim on appeal because his appeal was dismissed based on his direct-appeal waiver—a waiver which the Sixth Circuit found to be valid.

Because the Sixth Circuit declined to consider this claim on direct appeal, where sentencing claims belong, and because it held that Porter had voluntarily and knowingly

waived those proceedings, this Court cannot entertain the claim, even though Porter has disguised his sentencing claim as a claim of cause. *See State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (noting that "[t]he Court of Appeals was correct in applying [Supreme Court precedent], for it is this Court's prerogative alone to overrule one of its precedents"); *Reiser v. Residential Funding Corp.* 380 F.3d 1027, 1029 (7th Cir. 2004) ("In a hierarchical system, decisions of a superior court are authoritative on inferior courts;" thus "[j]ust as the court of appeals must follow decisions of the Supreme Court whether or not we agree with them, so district judges must follow the decisions of this court whether or not they agree."). Were Porter to be allowed review of his re-designed sentencing claim "then every sentencing dispute raised on appeal could be repackaged in this fashion and thus frustrate the lawful process for correcting judicial errors." *United States v. Calderon*, No. 98-1336, 1999 WL 801587, at *1 (6th Cir. Sept. 27, 1999).

Moreover, an issue which has been decided by the Sixth Circuit may not be revisited by this Court absent "highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (citation omitted) (listing cases). An example of such a circumstance includes an intervening change in the law. *Id.* (citing *Giraldo v. United States*, No. 94-2460, 54 F.3d 776 (6th Cir. May 11, 1995)). It does not appear that there has been an intervening change in the law or that any other extraordinary circumstance exists which would persuade the Court that it is appropriate to re-litigate the issue of Porter's waiver in this § 2255 motion.

Furthermore, if these claims qualified for collateral review, they have no merit.

Porter complains he was incorrectly assessed two points under § 2D1.1(b)(1), for possession of a dangerous weapon. To support a § 2D1.1(b)(1) enhancement, the government must show, by a preponderance of evidence that: 1) a petitioner possessed a dangerous weapon 2) during the commission of a drug-trafficking offense. *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996). Possession may be actual or constructive, *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir.), *cert. denied*, 540 U.S. 1063 (2003), and the latter type of possession may be proven by circumstantial evidence. *United States v. Hough*, 276 F.3d 884, 894 (6th Cir. 2002).

Upon proof of these two elements, a rebuttable presumption arises that the weapon was connected to a drug-trafficking crime. *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991). This presumption can be defeated only if a defendant demonstrates that it is "clearly improbable that the weapon was connected to the offense." U.S. Sentencing Guidelines Manual §2D1.1 comment. n.3. The "clearly improbable" burden is an onerous burden to meet. *United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003).

Here, the constructive possession element is satisfied since both the loaded firearm, located in close proximity to drug paraphernalia and drug packaging items, and the crack cocaine were found in Porter's residence. *See Sanchez*, 928 F.2d at 1460 (ruling that a weapon is possessed within the terms of § 2D1.1(b)(1) if a defendant owns or controls the weapon itself or the premises where it is located). The during-the-commission-of-drug-trafficking element is also met since the weapon was possessed while Porter engaged in the cocaine-dealing conspiracy. Porter acknowledged that he had

cooked cocaine into crack cocaine for resale. Moreover, Porter told Bryan to keep the weapon in the kitchen so that they would not be caught with it, so testified one of the agents who conducted the search of the residence and interviewed Bryan, leading the agent to conclude that Porter knew that the firearm was in the kitchen (Doc. 765, Sentencing Hr'g Tr. 35-37). Thus, because the presumption that the weapon was tied to the cocaine conspiracy arises and has not been rebutted by Porter, the §2D1.1 firearms enhancement was correctly applied to increase Porter's base level offense.

Porter next complains that there was an unwarranted disparity between the sentence imposed on him and the sentences handed down to similarly-situated co-defendants. Porter asserts that certain co-defendants received lesser sentences based on a 1:1 crack cocaine to powder cocaine ratio, whereas his higher sentence was based on an 18:1 ratio.

A sentencing court must consider, among other factors, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges" so that a court which correctly calculates and carefully considers the Guidelines range necessarily has given significant weight and consideration to the need to avoid unwarranted disparities. *Gall v. United States*, 552 U.S. 38, 53 (2007).

The Court correctly calculated and carefully considered Porter's Guidelines range, even going so far as to reduce his Guidelines range of 292 to 365 months, as set forth in

14

the presentence investigation report, to a range of 235 to 293 months imprisonment, in keeping with the 18:1 ration established in the Fair Sentencing Act.

Porter's sentence of 235 months was at the bottom of his reduced Guidelines range. The Sixth Circuit has instructed that "[s]entencing disparities are at their ebb when the Guidelines are followed . . . . The more out-of-range sentences that judges impose . . . , the more disparity there will be." *United States v. Vassar*, No. 07-5299, 346 F.App'x. 17, at 29, 2009 WL 2959290, at *11-*12 (6th Cir. Sept. 16, 2009). And too, as the United States points out in its response, the sentencing disparities referenced in § 3553(a)(6) are pegged to national disparities, not disparities between specific cases. *See United States v. Mikowski*, No. 08–1791, 332 F. App'x 250, 255 (6th Cir. June 3, 2009) (listing cases).

This claim lacks merit.

### D.    Ineffective Assistance

As illustrations of ineffective assistance, Porter presents the following five shortcomings on the part of his attorney:    (1) failing to object to the use of uncounseled convictions detailed in Porter's criminal history; (2) failing to object to the disclosure of protected information gained during Porter's proffer; (3) failing to object to the attribution of the entire drug amount involved in the conspiracy to Porter; (4) failure to request a downward departure under §5K2.0 for waiver of appellate rights; and (5) failing to object to the Court's incorrect factual findings and the prosecutor's misstatements.

The law governing claims of ineffective assistance resides in the Sixth Amendment, which provides, in pertinent part, that "[i]n all criminal prosecutions, the

accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id.* As with any other claim under § 2255, a movant bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

16

When considering *Strickland*'s second prong, in the context of a guilty plea, the movant must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Moss v. United States*, 323 F.3d 445, 454-55 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). To demonstrate a reasonable probability he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. See *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995), *cert. denied*, 516 U.S. 1058 (1996). The Sixth Amendment right to counsel extends to plea negotiations. *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010).

1. Uncounseled Convictions

As the first instance of ineffective assistance, Porter asserts that he had a vast criminal history of which his attorney was aware, but that counsel failed to perform research on those convictions to determine whether they were constitutional. Had his lawyer done his duty, he would have discovered that many of Porter's convictions were imposed without counsel's guiding hand.

As respondent accurately argues, Porter has not identified the convictions which were imposed without counsel. Thus, this claim lacks factual support and is facially insufficient to support a claim for relief under § 2255. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (per curiam) (finding that a claim unsupported by proof or any reference to such proof is legally insufficient to sustain a

review). The requirement for specific facts applies with special force to claims of ineffective assistance. *See Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.").

And too, as the probation officer pointed out in Porter's PSR, though some of Porter's criminal history listed convictions about which specific information was lacking, state law required a criminal accused to be advised of his right to counsel and, if he were indigent and desired representation, to be appointed counsel. Furthermore, unless Porter can show that his criminal history contained uncounseled convictions, then it must be presumed that counsel made no error at all but performed within the wide range of reasonably competent assistance. And without an error on the part of counsel, Porter has not established that he received ineffective assistance.

Porter has made no such a showing and this issue lacks merit.

## 2. Objections

Porter has listed as attorney errors counsel's failure to object to incorrect factual findings and misstatements involving to two state convictions which were too old to be listed in Porter's criminal history, to the prosecution's disclosure of statements obtained during Porter's proffer, and to the quantity of drugs attributed to Porter.

The record shows, however, that counsel made the objections which Porter insists he did not make. *See* Addendum to PSR, Objection Numbers Two and Four-Six (quantity of drugs and period of Porter's participation in conspiracy; accountability for

drugs; stale convictions; and criminal history). Counsel also urged the Court to sustain those objections, (Doc. 727, Petr.'s Sentencing Mem.). In addition, counsel's arguments and cross-examination of the government witness at the sentencing hearing encompassed many of those objections, as well as a challenge to the prosecution's use of the alleged prohibited information gleaned during Porter's proffer (Doc. 765, Sentencing Hr'g Tr. 9-14, 45-47). Because these illustrations of ineffective assistance are refuted by the record, they are groundless.

### 3. Prosecutor's Misstatement

Porter claims that counsel failed to object to the prosecutor's proffer that he had been convicted of rape. The criminal history section of the PSR lists a 1994 Fulton County, Georgia conviction for rape (PSR ¶ 44). But Porter has submitted a copy of the judgment, which shows that he pled guilty to the lesser included offense of false imprisonment and that the rape charge did not result in a conviction (Doc. 1017-2). Even if Porter were not convicted of rape as the PSR states, he was not assessed any criminal history points for that conviction. Since no points were involved for this conviction, Porter was not prejudiced by any error on the part of counsel, if there was any deficiency of counsel. And absent prejudice, Porter has no valid claim of ineffective assistance.

### 4. Downward Departure

Counsel's last error, according to Porter, was the failure to seek a downward departure based on the provision in the plea agreement which waived Porter's right to appeal. As the Court understands it, Porter is arguing that, since a departure on this basis

is not prohibited by the Sentencing Guidelines, then it is permitted and should have been sought by counsel.

However, Porter cites to no legal source or authority to support that a downward departure motion on this basis was proper. Counsel cannot be ineffective for the failure to pursue a claim which has no legal basis. *See Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) (no constitutional deficiency in failing to raise groundless issues). Furthermore, to the extent that Porter's claim can be characterized as a "hail mary" allegation of ineffective assistance, *Strickland* does not require counsel to advance an issue simply because there is "nothing left to lose by pursuing it." *See Knowles v. Mirzayance*, 556 U.S. 111, 121-22 (2009).

Also, without some identified legal authority to support the request for a downward departure, it is unlikely that this Court would have been receptive to the motion, especially since the appellate waiver was one of the bargained-for terms in the plea agreement. As the United States notes in its response, in exchange for Porter's guilty plea, it dismissed six counts of the indictment, including a firearms charge under 18 U.S.C. § 922(c), which called for a consecutive 60-month term of imprisonment.

This claim too lacks merit.

5. Cumulative Error

In the last claim, which is alleged in Porter's supporting brief and not in his § 2255 motion, he asserts that the doctrine of "cumulative error" should govern his claims of ineffective assistance and that the combination of alleged attorney errors, when

viewed together, show that his criminal proceedings were fundamentally unfair (Doc. 1017-1, Petr.'s Br. 17).

However, because Porter's allegations of ineffective assistance are groundless, there is no need to apply the cumulative error doctrine. *See Burton v. United States*, Nos. 3:03-cv-124, 3:97-cr-154, 2007 WL 1541929, at * 9 (E.D.Tenn. May 23, 2007). The Court has found no errors on the part of Porter's attorney and, thus, there are no attorney errors to accumulate. *See United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir. 1992) ("Because we find no merit to any of [defendant's] arguments of error, his claim of cumulative error must also fail."); *Snyder v. United States*, Nos. 00–72916–DT, CR, 95–81146–DT–18, 2001 WL 279758, at *7 (E.D.Mich. Jan. 22, 2001) (finding that a claim of cumulative error cannot be based on rejected attorney errors).

## V. Conclusion

Because Porter has waived his right to file this motion to vacate, and alternatively, because the claims presented are not cognizable or lack merit, this § 2255 motion to vacate will be **DENIED** and the case will be **DISMISSED**.

## VI. Certificate of Appealability

The Court must now consider whether to issue a certificate of appealability (COA) should Porter file a notice of appeal, since he may not appeal a final order in a § 2255 case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. §2253(c)(1). Issuance of a COA depends on whether a petitioner has made a substantial showing of the denial of a constitutional right. *See* 28

U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has individually assessed Porter's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. Because the resolution of Porter's claims would not be debatable among jurists of reason, he has not made the requisite showing for issuance of a COA. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Therefore, a COA will not issue.

A separate judgment will enter.

**ENTER:**

_____
LEON JORDAN
UNITED STATES DISTRICT JUDGE

22